CLOVERLEAF CAR COMPANY v PHILLIPS PETROLEUM
COMPANY

Docket No. 165252. Submitted November 8, 1994, at Grand Rapids.
Decided September 1, 1995, at 9:25 A.M.

Cloverleaf Car Company and Arthur and Judy Hambley brought
an action in the Allegan Circuit Court against Phillips Petro-
leum Company and Wykstra Oil Company, seeking damages for
contamination of the ground water under the plaintiffs' prop-
erty, which is located across the street from a gasoline station
owned by Wykstra. The plaintiffs pleaded claims sounding in
negligence, nuisance, trespass, strict liability, and violation of
several environmental protection statutes. Phillips had in-
stalled the underground gasoline tanks located at the station
when it had owned the station before selling it to Wykstra in
1975. In 1988, Wykstra discovered a gasoline leak and hired a
contractor to remove and replace the underground tanks. Dur-
ing the excavation process, gasoline spurted from an exposed
line, allegedly as the result of the line having been run over by
a backhoe. The court, Harry A. Beach, J., granted summary
disposition for Phillips. The plaintiffs appealed, claiming error
in the dismissal of the negligence, nuisance, and trespass
claims.

The Court of Appeals *held:*

1. A public nuisance is an unreasonable interference with a
common right enjoyed by the general public. A private citizen
may bring an action for a public nuisance only upon suffering a
harm different from that suffered by the general public. Be-
cause plaintiff Arthur Hambly claimed that his mental health
problems resulted from this incident, the plaintiffs were enti-
tled to bring their claim for a public nuisance.

2. A defendant is liable for a nuisance where the defendant
created the nuisance, the defendant owned or controlled the
land from which the nuisance arose, or the defendant employed
another person to do work from which the defendant knew a

REFERENCES

Am Jur 2d, Nuisances §§ 5, 126.
See ALR Index under Governmental Immunity or Privilege; Nui-
sances.

nuisance likely would arise. Although it is undisputed that the gasoline released from the tank unreasonably interfered with the public's health, the plaintiffs have neither pleaded nor shown that Phillips was responsible for the leak. Because the claims that the leak was the result of a faulty connector installed by Phillips and that the leak initially occurred while Phillips owned the property were mere speculation and because the mere fact that Phillips continued to sell gasoline to Wykstra did not create a basis for liability by Phillips, the court properly granted summary disposition for Phillips with respect to the claim of a public nuisance.

3. A private nuisance is shown where there is a nontrespassory invasion of another's interests in the private use and enjoyment of land. Because the plaintiffs have presented no evidence that Phillips' conduct resulted in the invasion of the plaintiffs' private use and enjoyment of their property, the court properly granted summary disposition for Phillips with respect to the claim of a private nuisance.

4. Because the property from which the contamination entered the ground water was not within the exclusive control of Phillips, and had not been within its control for thirteen years, the doctrine of res ipsa loquitur is not applicable with respect to the claims against Phillips.

5. Because there is no evidence that Phillips violated the provisions of the water resources commission act, MCL 323.1 *et seq.*; MSA 3.521 *et seq.*, no presumption of nuisance or negligence arose. Accordingly, the court properly granted summary disposition for Phillips with respect to the negligence claim.

6. Because there was no allegation that Phillips intended an intrusion on the property of the plaintiffs even if Phillips caused the spill, a trespass action has not been pleaded, and the court properly granted summary disposition for Phillips with respect to that claim.

Affirmed.

WHITE, J., dissenting, stated that there were genuine issues concerning whether the leak was caused by the backhoe and whether the contamination occurred while the tanks were still buried and as a result of negligent installation of the tanks by Phillips. Because a jury could conclude that the contamination occurred as a result of negligent installation of the tanks by Phillips, the trial court erred in granting summary disposition for Phillips.

1. NUISANCE — ABATEMENT OF NUISANCE — CONTROL.

    A seller in a commercial transaction relinquishes ownership and

control of its products and, accordingly, lacking the legal right to abate whatever hazards the products may pose to society, may not be held liable if those products thereafter constitute a nuisance.

2. Nuisance — Intrusive Nuisance.

An intrusive nuisance is a misnomer for the trespass-nuisance exception to governmental immunity and is only relevant to state and local governments.

*Ford & Kriekard, P.C.* (by *Arthur Staton, Jr.*), for the plaintiffs.

*Miller, Canfield, Paddock & Stone* (by *Michael B. Ortega* and *James D. Robb*), for the defendant.

Before: Doctoroff, C.J., and White and A. L. Garbrecht,* JJ.

Doctoroff, C.J. Plaintiffs appeal as of right from a May 24, 1993, order of the Allegan Circuit Court granting defendant Phillips Petroleum Company's motion for summary disposition and dismissing plaintiffs' claims of negligence, nuisance, and trespass for the contamination of the ground water under plaintiffs' property. We affirm the trial court's grant of summary disposition of the nuisance and negligence claims pursuant to MCR 2.116(C)(10) and the trespass claim pursuant to MCR 2.116(C)(8).

Plaintiffs own property directly across the street from a gasoline station. When defendant Phillips owned the gasoline station, it installed a flexible neoprene hose to connect the gasoline tanks to the dispensing lines that supply gasoline to the pumps. In 1975, Phillips sold the station to defendant Wykstra. Phillips continued to supply the gasoline to the station.

In 1988, Wykstra discovered a gasoline leak at

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the station. A contractor hired by Wykstra was replacing the old gasoline tanks. This contractor dislodged the buried tanks and lines and left them lying on the ground. During this excavation process, the contractor ran over a gasoline line with a backhoe. The next time a customer used the pump connected to that line, gasoline spurted into the air.

Wykstra immediately turned off the line and called the Department of Natural Resources. The DNR representative determined that the ground water below the tank might have been contaminated by the gasoline. A private consulting company verified that ground water contamination had occurred.

There is some dispute concerning the cause of the leak. In his affidavit, a DNR representative indicated that the leak came from the flexible connector installed by Phillips. Wykstra testified that when the contractor ran over the line with the backhoe, it stretched the flexible connector. This caused the connector to leak the next time someone used the pump. The report of the private environmental consulting company stated that there was no evidence of any prior gasoline leak at this station. Tank tightness tests had been performed in 1986. After the investigation was completed, Wykstra disposed of the old tanks, the old lines, and the flexible connector.

In 1990, plaintiffs attempted to secure financing for their car rental company, which was located directly across the street from the gasoline station. Because of the ground water contamination, no financing was available. Plaintiffs filed suit against Wykstra and Phillips, alleging negligence, nuisance, trespass, strict liability, and violation of several environmental protection statutes. Wyks-

tra reached a settlement with plaintiffs and is not a party to this appeal.

Phillips brought a motion for summary disposition under MCR 2.116(C)(8) and (10). The trial court granted summary disposition for Phillips with respect to all the counts against it. Plaintiffs appeal the dismissal of the negligence, nuisance, and trespass counts.

First, plaintiffs argue that the trial court erred in dismissing their public and private nuisance claims. The trial court granted summary disposition pursuant to MCR 2.116(C)(10) because no question of material fact existed regarding Phillips' liability. We agree with the decision of the trial court.

A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual basis of the claim. A court reviewing the motion must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence in favor of the nonmoving party. *Manning v Hazel Park,* 202 Mich App 685, 689; 509 NW2d 874 (1993).

A public nuisance is an unreasonable interference with a common right enjoyed by the general public. The term "unreasonable interference" includes conduct that (1) significantly interferes with the public's health, safety, peace, comfort, or convenience, (2) is proscribed by law, or (3) is known or should have been known by the actor to be of a continuing nature that produces a permanent or long-lasting, significant effect on these rights. *Wagner v Regency Inn Corp,* 186 Mich App 158, 163; 463 NW2d 450 (1990). A private citizen may file an action for a public nuisance against an actor where the individual can show he suffered a type of harm different from that of the general public. *Adkins v Thomas Solvent Co,* 440 Mich 293, 306, n 11; 487 NW2d 715 (1992). Because plaintiff Arthur

Hambley claimed that his mental health problems resulted from this incident, plaintiffs were entitled to file this claim.

In general, even though a nuisance may exist, not all actors are liable for the damages stemming from the condition. See, e.g., 4 Restatement Torts, 2d, § 834, p 149. A defendant is liable for a nuisance where (1) the defendant created the nuisance, (2) the defendant owned or controlled the land from which the nuisance arose, or (3) the defendant employed another person to do work from which the defendant knew a nuisance would likely arise. *Gelman Sciences, Inc v Dow Chemical Co,* 202 Mich App 250, 252; 508 NW2d 142 (1993).

While the spread of gasoline from the tank system into the ground water did unreasonably interfere with the public's health, there is no evidence that Phillips was responsible for the leak. In other words, although a public nuisance did exist, there is no question of material fact regarding Phillips' liability for that nuisance.

Plaintiffs maintain that Phillips created the nuisance by installing the flexible connector that allegedly leaked. Although the DNR representative's inspection revealed that the leak probably came from the flexible neoprene connector, the exact cause of the leak is unknown. There is no evidence that Phillips improperly installed the connector or that it did not meet the required standards. Plaintiffs argue that the installation of the flexible connector violated Rule 71 of the State Police Flammable Liquids regulations, 1979 AC, R 28.671. While that rule suggests that piping be iron, steel, or brass, it allows other types of piping that comply with the American Standards Association Code. *Id.* Plaintiffs have not provided any evidence that the neoprene rubber connectors did not comply with the American Standards Associa-

tion Code. Because Wykstra disposed of the connector, inspection is no longer possible.

Plaintiffs also allege that a question of material fact existed about whether the leak initially occurred when Phillips owned the land. Phillips sold the station in 1975. The leak was discovered in 1988, thirteen years later. The report of the environmental consulting company indicated that there was no evidence of any leak before 1988. Further, tank tightness tests performed in 1986 did not reveal any problems.

Plaintiffs claim that, even if the leak occurred after Wykstra purchased the station, Phillips was liable because it sold the gasoline to Wykstra. If a commercial transaction is involved, control of the nuisance at the time of the injury is required. Because a seller in a commercial transaction relinquishes ownership and control of its products when they are sold, it lacks the legal right to abate whatever hazards its products may pose. *Gelman Sciences, supra* at 252. Because Phillips had no control over what happened to the gasoline after it was delivered, it cannot incur liability as the supplier of the gasoline.

There was no indication of any gasoline leak for thirteen years after Phillips sold the station. The only evidence of any problem occurred in 1988, when a backhoe ran over the gasoline line. Wykstra testified that this incident stretched the connector and caused the leak. Plaintiffs have not presented any evidence to show that some other problem caused the leak.

Plaintiffs' theories regarding a defect in the connector, or a leak before this incident, are mere speculation. A party opposing a motion for summary disposition must present more than conjecture and speculation to meet its burden of providing evidentiary proof establishing a genuine issue

of material fact. *Libralter Plastics, Inc v Chubb Group of Ins Cos,* 199 Mich App 482, 486; 502 NW2d 742 (1993).

Second, plaintiffs alleged a claim of private nuisance. We note that the parties' and the trial court's consideration of this issue under the doctrine of "intrusive nuisance" is misplaced. An "intrusive nuisance" is a misnomer for the trespass-nuisance exception to governmental immunity and is only relevant to state and local governments. *Hadfield v Oakland Co Drain Comm'r,* 430 Mich 139, 154; 422 NW2d 205 (1988). Because Phillips is not a government entity claiming immunity, this doctrine does not apply here.

Nevertheless, we agree with the trial court that summary disposition of this claim was proper. An actor is

> subject to liability for private nuisance for a nontrespassory invasion of another's interest in the private use and enjoyment of land if (a) the other has property rights and privileges in respect to the use or enjoyment interfered with, (b) the invasion results in significant harm, (c) the actor's conduct is the legal cause of the invasion, and (d) the invasion is either (i) intentional and unreasonable, or (ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless, or ultrahazardous conduct. [*Adkins, supra* at 304.]

As stated above, plaintiffs have not provided any evidence that Phillips' conduct resulted in the invasion of plaintiffs' property.

Next, plaintiffs allege that the trial court erred in summarily dismissing their negligence claim. Plaintiffs assert that the doctrine of res ipsa loquitor should apply. The major purpose of the doctrine of res ipsa loquitur is to create at least an

inference of negligence where the plaintiff is unable to prove the occurrence of a negligent act. To avail themselves of the doctrine, plaintiffs must show that (1) the event would ordinarily not occur in the absence of negligence, (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant, and (3) it must not have been due to any voluntary action or contribution on the part of the plaintiffs. *Jones v Porretta,* 428 Mich 132, 150-151; 405 NW2d 863 (1987).

Plaintiffs cannot show that the leak occurred during the period that the instrumentality was within the exclusive control of Phillips. On the date the backhoe ran over the line, Wykstra had exclusive control of the gasoline station's instrumentality. Wykstra hired the contractor who operated the backhoe.

While plaintiffs acknowledge that the water resources commission act, MCL 323.1 *et seq.*; MSA 3.521 *et seq.,* does not authorize a private right of action, they argue that Phillips' violation of this statute constituted both a rebuttable presumption of negligence and a prima facie case of a public nuisance. MCL 323.6; MSA 3.526. It is true that violation of a statute creates a rebuttable presumption of negligence. *Johnson v Bobbie's Party Store,* 189 Mich App 652, 661; 473 NW2d 796 (1991). It is also true that this statute expressly authorizes an action for public nuisance when a party violates its requirements. MCL 323.6(4); MSA 3.526(4).

However, there is no evidence that Phillips violated the statute. The water resources commission act prohibits any person from directly or indirectly discharging into the waters of the state any substance that is or may become injurious to the public health, safety, or welfare. MCL 323.6(1); MSA 3.526(1). The only discharge of gasoline into

the water supply was discovered thirteen years after Phillips sold the station. There is no evidence that any action by Phillips either directly or indirectly caused this discharge. Because the plaintiffs did not plead facts sufficient to raise a question of material fact concerning whether Phillips had violated the statute, no presumption of either negligence or public nuisance exists. The trial court properly dismissed plaintiffs' negligence claim pursuant to MCR 2.116(C)(10).

Finally, plaintiffs claim that the trial court should not have granted summary disposition of their trespass claim. We disagree. The trial court granted summary disposition of this claim pursuant to MCR 2.116(C)(8). A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone. All factual allegations supporting the claim are accepted as true, as well as any reasonable inferences or conclusions that can be drawn from the facts. *Flanders Industries, Inc v Michigan,* 203 Mich App 15, 25; 512 NW2d 328 (1993).

A trespass is an unauthorized invasion upon the private property of another. *Gelman Sciences, supra* at 253. However, the actor must intend to intrude on the property of another without authorization to do so. If the intrusion was due to an accident caused by negligence or an abnormally dangerous condition, an action for trespass is not proper. Prosser & Keeton, Torts (5th ed), § 13, pp 73-74. Although plaintiffs allege that Phillips caused the gasoline to spill into the ground water, they did not claim that Phillips intended this intrusion. The trial court's grant of summary disposition of the trespass claim was proper under MCR 2.116(C)(8).

In summary, plaintiffs have attempted to prove that Phillips was liable for the gasoline spill by

providing evidence that Phillips owned the station thirteen years before any leak was discovered and that Phillips installed the flexible connector. The only evidence of a problem would indicate that the connector was damaged when the contractor ran over the gasoline line with the backhoe. Because this evidence does not produce a question of material fact regarding Phillips' liability, the trial court properly dismissed plaintiffs' nuisance and negligence claims pursuant to MCR 2.116(C)(10). Because plaintiffs did not plead that Phillips intended to intrude upon their property, the trial court properly dismissed plaintiffs' trespass claim pursuant to MCR 2.116(C)(8).

Affirmed.

A. L. GARBRECHT, J., concurred.

WHITE, J. *(dissenting).* I respectfully dissent. There was a genuine issue whether the leak was caused by the backhoe operator. The backhoe operator denied any knowledge of striking the piping and stated that, on the basis of his experience, he would have known had it occurred. An inspector from the Department of Natural Resources denied seeing anything that indicated the connector piping had been struck during excavation and denied being so informed. Defendant Wykstra gave inconsistent accounts of the incident and the condition of the connector piping. Further, the contamination appeared to be quite extensive and beyond what might be expected from a leak that was immediately redressed. While tank tightness tests had been performed in 1986, these tests apparently only tested the integrity of the tanks and not the connectors. Lastly, there was evidence that Phillips designed and installed the system and

then covered it with asphalt or concrete and that
the system remained undisturbed until the tank
replacement activity. In short, there was evidence
from which a jury could conclude that Phillips
installed the flexible connector, which remained
undisturbed and which leaked, causing contamina-
tion of plaintiffs' property.[1] Because there was
evidence from which a jury could conclude that
Phillips created the condition that led to the leak,
I conclude that summary disposition was inappro-
priate. 2 Restatement Torts, 2d, § 373, p 276; 4
Restatement Torts, 2d, § 840A, p 168. I would
reverse with regard to the nuisance and negligence
claims.

[1] Further, there was some indication that the system was designed
to have a flexible connector with metal meshing and the actual
connector had none. Plaintiffs rely on drawings for the system to
support this claim. While the drawings may be so interpreted, such
an interpretation is not manifest.