*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TAMARA HARRIS,

Plaintiff-Appellee,

v

ALLSTATE INSURANCE COMPANY and
ALLSTATE PROPERTY & CASUALTY
COMPANY,

Defendants,

and

CITY OF DETROIT and FRANK DICKERSON,

Defendants-Appellants.

UNPUBLISHED
December 21, 2023

No. 364028
Wayne Circuit Court
LC No. 21-010398-NI

Before: JANSEN, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

Defendants-appellants,[1] the city of Detroit (the City) and Frank Dickerson, appeal as of right the trial court's order denying their motion for summary disposition on the basis of governmental immunity under MCR 2.116(C)(7). Because plaintiff failed to properly plead or raise genuine issues of material fact in avoidance of governmental immunity, we reverse and remand for entry of an order granting summary disposition in defendants' favor.

## I. BACKGROUND FACTS

Plaintiff was driving a Dodge Caravan minivan along Whittier Street in Detroit toward the intersection with McKinney Street on August 19, 2020. Dickerson, an employee of the City, was assigned to clean the streets using a five-ton street sweeper the City owned; he had stopped on

---

[1] As they are the only parties to this appeal, we refer to the City and Dickerson as "defendants."

-1-

Whittier near the corner of McKinney to fill his street sweeper with water from a fire hydrant. Dickerson testified on deposition that, after he finished filling the vehicle with water, he entered the vehicle, turned off the hazard flashers he had activated, checked his mirrors, and began driving forward at a speed no more than four or five miles per hour. As he began to turn right onto McKinney, plaintiff suddenly passed him, making a wide right turn, cutting him off and colliding with him.

Plaintiff's testimony, and that of her passenger, Jarod Mason, were largely consistent with Dickerson's, with a few notable exceptions. Plaintiff testified on deposition that she did not stop at the intersection of Whittier and McKinney, but instead pulled past the sweeper and turned right in one smooth motion. She stated several times that she did not see Dickerson until her car collided with the street sweeper, and thus did not know whether Dickerson and his street sweeper were stopped or moving when she began to turn in front of them. Mason, however, testified initially that the street sweeper was stopped as they passed it, and that it "pulled off real quick" and collided with the minivan. However, Mason later admitted that, "well, I couldn't see [the street sweeper] until she started turning," and explained that "you couldn't even see what was in front of you until you make that turn, because the truck was so big." Because he could not see what was happening, he speculated: "I guess she had to cut over and was . . . trying to go down the street, and then he pulled into us."

Despite her otherwise consistent testimony that she neither saw nor noticed the street sweeper until she collided with it, plaintiff initially testified that Dickerson was using his cell phone while operating the sweeper: "I guess the guy [Dickerson] that was driving the truck, he was on his phone." But plaintiff later clarified that the only time she saw Dickerson on the phone was after the accident, when he emerged from the sweeper and called 911 and his supervisor, and Mason also testified that he saw Dickerson use his cell phone only after the accident.

Dickerson himself testified that he was not using his phone while operating the street sweeper, then used it after the accident to contact police and his supervisor. At his deposition, Dickerson even provided his cell phone number and the name of the service provider to plaintiff's counsel at the latter's request, who stated her intention to obtain the records of Dickerson's phone usage. However, no such records were ever introduced into the record below.[2]

All of this notwithstanding, plaintiff's brief on appeal continues to assert, without record citation or any other basis, that Dickerson was using his cell phone while operating the street sweeper.

Plaintiff declined Dickerson's offer to call an ambulance, but later went to a hospital emergency department where she underwent diagnostic imaging which showed no fractures, and a physical examination which was characterized as "unimpressive." Plaintiff was discharged the same day, with instructions to follow up with her primary-care physician, which she did not do. She did, however, contact an attorney who, according to plaintiff, "assigned" her to physical therapy, which she began receiving soon afterward. Plaintiff testified about the injuries she

---

[2] We note that Dickerson's deposition took place approximately 10 months before the hearing on defendants' motion, thus giving plaintiff's attorney ample time to pursue the matter.

allegedly sustained and how they affected her ability to work and conduct the daily activities of her life.

Plaintiff sued the City, Dickerson, and the no-fault insurer she alleged owed her coverage for her injuries. Plaintiff alleged that Dickerson acted negligently to cause her injuries that constituted a serious impairment of body function. Plaintiff also sought to plead facts in avoidance of governmental immunity under the motor-vehicle and gross-negligence exceptions. Although plaintiff asserted that Dickerson acted with gross negligence, using phrases such as "gross and negligent," "gross negligence," and "grossly negligent," she did not specify what conduct constituted gross negligence, but instead generally used terms typically associated with ordinary-negligence claims, such as "careless," "heedless," "improperly," "imprudent," and "negligent."

Defendants filed a motion for summary disposition seeking to dismiss plaintiff's claims on the basis of governmental immunity. Defendants argued that Dickerson was entitled to governmental immunity under MCL 691.1407(2) because plaintiff did not properly plead or raise a question of fact that Dickerson had acted with gross negligence which was the proximate cause of plaintiff's injuries. Defendants also argued that the motor-vehicle exception to governmental immunity under MCL 691.1405 did not apply because plaintiff did not properly plead or raise a question of fact showing that Dickerson negligently operated the street sweeper. Defendants further asserted that plaintiffs failed to show that her injuries rose to the level of a serious impairment of body function, and that plaintiff's driving without a license was negligence per se and the actual proximate cause of her injuries. With respect to the bodily injury issue, defendants supported their motion with reports from insurance medical examinations conducted by three separate physicians expressing opinions that plaintiff's accident-related injuries had fully resolved, that there was no need for any further treatment, and that plaintiff should be able to conduct all of her daily activities without restriction.

Plaintiff responded that her suspended license was not a proximate cause of the accident or her injuries, that defendants' position on negligence and gross negligence invited the trial court to improperly weigh the credibility of the witnesses, that Dickerson was on his cell phone while operating the street sweeper, and that this raised a question of fact on those issues. Plaintiff also argued that she suffered injuries that satisfied the no-fault threshold requiring serious impairment of body function. She cited and attached medical records and affidavits from three of her treating physicians in support of that assertion, each of which outlined plaintiff's injuries and characterized them as "severe" and requiring "significant medical care." One of her treating physicians testified by affidavit that plaintiff's injuries led him to advise her to "abstain from any physical activities including household, occupational or recreational."

After hearing the motion, the trial court held that there were questions of fact with respect to the bodily injury, negligence, and gross negligence issues in light of the seemingly conflicting accounts of how the accident took place. The court, however, did not discuss the standard for gross negligence, whether Dickerson's conduct as pleaded met that standard, or whether the evidence plaintiff presented raised a question of fact. The court denied defendants' motion, and entered a written order to that effect on November 18, 2022. This appeal followed.

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Corley v Detroit Bd of Ed*, 470 Mich 274, 277-278; 681 NW2d 342 (2004). "[T]he immunity conferred upon governmental agencies is *broad*, and the statutory exceptions thereto are to be *narrowly* construed." *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 158; 615 NW2d 702 (2000). "[G]overnmental immunity being a characteristic of government, a party suing a unit of government must plead in avoidance of governmental immunity." *Mack v Detroit*, 467 Mich 186, 203; 649 NW2d 47 (2002).

## III. ANALYSIS

The trial court denied defendants' motion for summary disposition predicated on governmental immunity on the ground that there were questions of fact concerning whether Dickerson's conduct amounted to the negligence plaintiff must prove to prevail against the City, or the gross negligence plaintiff must prove to prevail against Dickerson. For the reasons that follow, however, we conclude that plaintiff failed to raise any genuine issue of material fact on either point, and thus, the trial court improperly denied defendants' motion.

## A. DICKERSON AND GROSS NEGLIGENCE

The Legislature enacted the governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, providing that governmental agencies are generally immune from tort liability unless the GTLA provides otherwise. *See Mack*, 467 Mich at 195. "Except as otherwise provided in [the GTLA], a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." MCL 691.1407(1). Governmental employees are also immune from tort liability for personal injury or property damage caused in the course of their employment if the employee is, or reasonably believes he or she is, acting within the scope of employment, the governmental agency is exercising a governmental function, and the employee's conduct "does not amount to gross negligence that is the proximate cause of the injury or damage." MCL 691.1407(2).

The GTLA defines "gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). A common misconception is that "gross negligence" can be established by conduct that reaches an exceptionally high level of negligence, when in fact the applicable standard requires proof of conduct more wrongful than the mere breach of the standard of care. This Court has emphasized that the sort of conduct that constitutes gross negligence under MCL 691.1407(8)(a) is

> almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge. [*Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004).]

Here, there is no dispute that Dickerson was a governmental employee engaged in the course of his employment, or that the City's employment of Dickerson to operate the street sweeper

was an exercise of a governmental function. Accordingly, the dispositive issue regarding whether Dickerson is entitled to summary disposition on the basis of governmental immunity is whether plaintiff raised a genuine question of material fact about whether he committed gross negligence.

On appeal, however, plaintiff's sole basis for arguing that there is a question of fact regarding whether Dickerson's conduct constituted gross negligence is asserting that he "was on his cell phone while operating a City of Detroit Street Sweeper," and thus that, "[w]hile not paying attention, he shifted his vehicle into drive and did not see Plaintiff making a right turn in front of him, causing the collision." But as discussed, there is simply no evidence on the record to support this allegation. In fact, even the trial court concluded that plaintiff's trial counsel misrepresented the record when he made that assertion. Whether a reasonable jury could conclude that Dickerson's use of a cell phone during the operation of his street sweeper constituted gross negligence is beside the point, because there is simply no evidence that Dickerson ever did so.

Because plaintiff's sole basis for claiming that a question of fact exists on this issue amounts to a factual assertion without any record evidence whatsoever to support it, she has entirely failed to raise a genuine issue of material fact about whether Dickerson acted with gross negligence. And, on appeal, plaintiff has asserted no other basis for holding that she raised a question of fact with respect to gross negligence. "Failure to brief a question on appeal is tantamount to abandoning it." *State Treasurer v Sprague*, 284 Mich App 235, 243; 772 NW2d 452 (2009). Because plaintiff had not raised such a question of fact, Dickerson was entitled to a finding as a matter of law that there is no applicable exception to the governmental immunity to which he was presumptively entitled. Accordingly, the trial court improperly denied him summary disposition.

## B. THE CITY AND NEGLIGENCE

Plaintiff also seeks damages from the City under the GTLA's so-called motor vehicle exception, according to which "[g]overnmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner . . . ." MCL 691.1405. This exception potentially exposes the City, but not Dickerson, to tort liability for Dickerson's operation of the street sweeper if Dickerson acted with negligence, not necessarily gross negligence.

After careful review of the record, we conclude that the "evidence" plaintiff relies on in support of her position is little more than a collection of assertions based on speculation.

Dickerson plainly testified that, after he had stopped to refill his sweeper with water, he slowly drove forward, then looked at his side mirrors and through his windshield as he was turning to see whether anyone was in his path, and did not see plaintiff until she turned in front of him and struck his vehicle. Plaintiff consistently and repeatedly testified that she never saw or noticed what the parties agree was a large vehicle and nevertheless turned in front of it without slowing, and only discovered that this large, slow-moving street sweeper was even there when she collided with it. Nothing in plaintiff's testimony contradicts Dickerson's account of how the collision came about. Again, Mason testified initially that Dickerson was stopped and suddenly pulled forward when plaintiff turned, but later he acknowledged that he "couldn't see [the street sweeper] until

-5-

[plaintiff] started turning" and said "I guess she had cut over . . . and then he pulled into us." We observe that defendants presented Dickerson's unwavering, clear testimony about what happened, but that plaintiff presented testimony from herself and Mason in which they admitted that they could not see Dickerson until the accident occurred and were left to guess about what had taken place.[3]

"A party opposing a motion for summary disposition must present more than conjecture and speculation to meet its burden of providing evidentiary proof establishing a genuine issue of material fact." *Cloverleaf Car Co v Phillips Petroleum Co*, 213 Mich App 186, 192-193; 540 NW2d 297 (1995). Plaintiff's entire theory of the case was based on speculation and conjecture, while Dickerson's testimony was not. The only conflict in the factual accounts resulted mostly from plaintiff's and Mason's speculative testimony from which they backed off by admitting that they did not actually see anything related to the collision until it had occurred. A reasonable finder of fact presented with the testimony on this record could not properly accept the speculative testimony of two witnesses who admitted that they did not actually observe what Dickerson was doing. Further, given Dickerson's testimony about his operation of the sweeper and plaintiff's and Mason's testimony that plaintiff turned in front of it without slowing down or apparently looking, a reasonable finder of fact would not conclude that Dickerson was negligent.

For these reasons, we conclude that the trial court improperly determined that there was a question of fact regarding Dickerson's alleged negligence, and thus, improperly denied the City summary disposition on the basis of governmental immunity.[4]

In summary, we reverse the trial court's order denying defendants' motion for summary disposition, and remand this case to the trial court for entry of an order granting that motion.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola

---

[3] Recall that plaintiff's cell-phone allegation was supported only by plaintiff's "guess" that Dickerson had been using one.

[4] Because our decision of this issue is fully dispositive of plaintiff's claims against the City, we need not address defendants' remaining arguments.